SEYFARTH SHAW LLP
Christian J. Rowley (SBN 187293)
crowley@seyfarth.com
Kerry Friedrichs (SBN 198143)
kfriedrichs@seyfarth.com
Parnian Vafaeenia (SBN 316736)
pvafaeenia@seyfarth.com
Taylor D. Horn (SBN 329435)
thorn@seyfarth.com
560 Mission Street, 31st Floor
San Francisco, California 94105
Telephone: (415) 397-2823
Facsimile: (415) 397-8549

Attorneys for Defendants
KAISER FOUNDATION HOSPITALS and THE
PERMANENTE MEDICAL GROUP, INC.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TROY FAIBVRE, MAYADA HAMODA, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>KAISER FOUNDATION HOSPITALS and THE PERMANENTE MEDICAL GROUP, INC., and DOES 1-20, inclusive<br><br>Defendants. | Case No.: **'25CV617  H    JLB**<br><br>**DEFENDANTS KAISER FOUNDATION HOSPITALS AND THE PERMANENTE MEDICAL GROUP, INC.'S NOTICE OF REMOVAL**<br><br>[San Diego Superior Court, Case No. 25CU007700C]<br><br>Complaint Filed: February 11, 2025<br>Trial Date: None Set |

DEFENDANTS' NOTICE OF REMOVAL

1

2

3

**TO THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF CALIFORNIA AND TO PLAINTIFFS, TROY FAIBVRE AND MAYADA HAMODA, AND THEIR ATTORNEYS OF RECORD:**

4

5

6

7

8

**PLEASE TAKE NOTICE** that Defendants Kaiser Foundation Hospitals and The Permanente Medical Group, Inc. (collectively, "Defendants") file this Notice of Removal, pursuant to the Class Action Fairness Act of 2005 ("CAFA") and 28 U.S.C. sections 1332(c), 1332(d)(2), 1441(a), 1446 and 1453. Removal is proper for the reasons set forth below.

9

**I.    BACKGROUND**

10

11

12

13

1.    On February 11, 2025, Plaintiffs, Troy Faibvre and Maya Hamoda ("Plaintiffs"), filed a class action complaint in the Superior Court of California for the County of San Diego, titled "*Faibvre, et al. v. Kaiser Foundation Hospitals, et al.*," Case No. 25CU007700C ("Complaint").

14

15

16

17

18

19

20

2.    On February 14, 2025, Defendants' registered agent for service of process in California received the Summons; Complaint; Civil Case Cover Sheet; Notice of Case Assignment and Case Management Conference; and ADR Information Package. A true and correct copy of Plaintiffs' Complaint is attached hereto as **Exhibit A**. A true and correct copy of Plaintiffs' Summons is attached as **Exhibit B**. A true and correct copy of all other documents that Defendants have received from Plaintiff or that have been filed with the state court to date are attached as **Exhibit C**.

21

**II.    TIMELINESS OF REMOVAL**

22

23

24

25

26

27

3.    The time for filing a Notice of Removal does not run until a party has been formally served with the summons and complaint under the applicable state law "setting forth the claim for relief upon which such action or proceeding is based" or, if the case stated by the initial pleading is not removable, after receipt of any "other paper from which it may be first ascertained that the case is one which is or has become removable." 28 U.S.C. §§ 1446; *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344,

28

347-48 (1999) (holding that "a named defendant's time to remove is triggered by simultaneous service of the summons and complaint").

4.      This Notice of Removal is timely because Defendants filed it within thirty (30) days of receiving service of the Summons and Complaint on February 14, 2025. 28 U.S.C. § 1446(b). Thirty days therefrom is March 16, 2025, which is a Sunday. Defendants are filing this Notice of Removal on March 14, 2025, rendering it timely.

## III.    PLAINTIFFS' CLAIMS

5.      Plaintiffs' Complaint asserts nine causes of action: (1) Failure to Pay all Wages Owed; (2) Failure to Pay Overtime; (3) Failure to Pay Minimum Wage; (4) Failure to Authorize and/or Permit Meal Breaks; (5) Failure to Authorize and/or Permit Rest Breaks; (6) Breach of Contract; (7) Failure to Furnish Accurate Wage Statements; (8) Waiting Time Penalties; and (9) Unfair Business Practices.

6.      Plaintiffs' claims stem from their employment with U.S. Nursing Corporation ("USN") and their alleged assignment in the Fall of 2023 to work at Defendants' facilities in California while those facilities were engaged in a labor dispute. The Complaint alleges that Defendants are liable under California Labor Code section 2810.3 as a "client employer." Compl., ¶ 11. It also alleges that Defendants are liable as "joint employers." Compl., ¶ 10. Plaintiffs' Complaint does not name USN as a defendant.[1]

7.      The Complaint asserts claims on behalf of Plaintiffs and a putative class defined as, "[a]ll non-exempt employees who were hired and assigned by U.S. Nursing Corporation to work at Kaiser facilities in California when those facilities were engaged in a labor dispute during the Class Period." Compl., ¶ 26. The Complaint defines the "Class Period" as "any time from four years prior to the filing of this Complaint until the date of trial"—i.e., February 11, 2021 until the date of trial. *Id.*

---

[1] Plaintiffs, along with three other plaintiffs, have sued USN in a separate, overlapping action, titled *Greene, et al. v. U.S. Nursing Corporation, et al.*, which is pending in the United States District Court for the Southern District of California, Case No. 3:24-cv-01796-BTM-DTF.

DEFENDANTS' NOTICE OF REMOVAL

## IV. THE COURT HAS JURISDICTION UNDER THE CLASS ACTION FAIRNESS ACT OF 2005

8. This Court has original jurisdiction of this action under CAFA because the amount in controversy, exclusive of interest and costs, exceeds $5,000,000, the number of putative class members exceeds 100, and at least one putative class member is a citizen of a state different from that of Defendants. 28 U.S.C. §§ 1332(d)(2), (d)(5)(B), (d)(6).

**A. Minimal diversity exists because Plaintiffs are citizens of Mississippi and New Jersey, respectively, while Defendants are citizens of California.**

9. CAFA requires only minimal diversity; that is, at least one purported class member must be a citizen of a state different from at least one named defendant. 28 U.S.C. § 1332(d)(2)(A).

**1. Plaintiffs are citizens of Mississippi and New Jersey, respectively.**

10. For purposes of determining diversity, a person is a "citizen" of the state in which he or she is domiciled. *Kantor v. Wellesley Galleries, Inc.*, 704 F.2d 1088, 1090 (9th Cir. 1983) ("To show state citizenship for diversity purposes under federal common law a party must … be domiciled in the state"). Residence is *prima facie* evidence of domicile. *State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("the place of residence is prima facie the domicile"); *see also Zavala v. Deutsche Bank Trust Co. Americas*, 2013 WL 3474760, at *3 (N.D. Cal. July 10, 2013) (where a plaintiff's complaint alleges he resides in California, "in the absence of evidence to the contrary, [plaintiff] is a California citizen for diversity purposes"). Citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) ("For purposes of diversity jurisdiction, an individual is a citizen of his or her state of domicile, which is determined at the time the lawsuit is filed") (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)).

11. The Complaint alleges that Plaintiff Faibvre resides in Mississippi, and that Plaintiff Hamoda resides in New Jersey. Compl., ¶¶ 6, 7. Plaintiffs therefore are citizens of Mississippi and New Jersey, respectively, for purposes of diversity jurisdiction.

1

### 2.    Defendants are citizens of California.

2    12.    Defendants are, and were at the time of the filing of this action, citizens of

3    California. For purposes of diversity jurisdiction, a corporation is deemed a citizen of the

4    state "by which it has been incorporated" and of the state "where it has its principal place

5    of business." 28 U.S.C. § 1332(c)(1).[2] A business's "principal place of business" is where

6    its "nerve center" resides—*i.e.*, where the corporate headquarters resides and where a

7    corporation's high level officers direct, control and coordinate its activities on a day-to-

8    day basis. *Hertz Corp. v. Friend*, 559 U.S. 77, 80-81, 92-93 (2010) ("We conclude that

9    'principal place of business' is best read as referring to the place where a corporation's

10    officers direct, control, and coordinate the corporation's activities").

11    13.    Defendant Kaiser Foundation Hospitals is a nonprofit public benefit

12    corporation formed under the laws of California. Its principal place of business is in

13    Oakland, California. It is therefore a citizen of California for purposes of diversity

14    jurisdiction.

15    14.    Defendant The Permanente Medical Group, Inc. is a corporation

16    incorporated under the laws of California. Its principal place of business is in Pleasanton,

17    California. It is therefore a citizen of California for purposes of diversity jurisdiction.

18    15.    Because Plaintiffs are citizens of states different from Defendants, there is

19    minimal diversity for purposes of CAFA.

20    ### B.    The putative class has more than 100 members.

21    16.    CAFA's requirement that the class comprise at least 100 members is

22    satisfied here because Defendants are informed and believe that USN's business records

23    show that it assigned 4,984 individuals to work for Defendants during a 3-day labor

24    dispute in California in 2023.

25    _____

26    [2] The citizenship of any fictitiously named "Doe" defendants' is "disregarded for removal
purposes and becomes relevant only if and when the plaintiff seeks leave to substitute a

27    named defendant." *Soliman v. Philip Morris, Inc.*, 311 F. 3d 966, 971 (9th Cir. 2002); *see
also Abrego v. Dow Chemical Co.*, 443 F.3d 676, 679-80 (9th Cir. 2006) (applying rule to

28    CAFA removal).

**C.      Plaintiffs' Complaint places more than $5 million into controversy.**

17.      Subject matter jurisdiction under CAFA is proper if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(2). To assess the amount in controversy, the claims of the plaintiffs and all putative class members are aggregated. 28 U.S.C. § 1332(d)(6).

18.      To effect a removal under CAFA, a removing defendant "must file in the federal forum a notice of removal 'containing a short and plain statement of the grounds for removal.'" *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 87 (2014) (quoting 28 U.S.C. § 1446(a)). The short and plain statement "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold." *Id.* at 89. It is well established that "a removing defendant's notice of removal need not contain evidentiary submissions but only plausible allegations of the jurisdictional elements." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 922 (9th Cir. 2019) (internal citations omitted); *see also Dart Cherokee*, 574 U.S. at 84 ("A statement 'short and plain' need not contain evidentiary submissions").

19.      By enacting CAFA, Congress intended for federal courts to have broad jurisdiction over interstate class actions where "the value of the matter in litigation exceeds $5 million either from the viewpoint of the plaintiff or the viewpoint of the defendant, and regardless of the type of relief sought (e.g., damages, injunctive relief or declaratory relief)." Senate Judiciary Report, S. REP. 109-14, at 42 ("Overall, new section 1332(d) is intended to expand substantially federal court jurisdiction over class actions. Its provision should be read broadly, with a strong preference that interstate class actions should be heard in a federal court if properly removed by any defendant.") As such, there is no presumption against CAFA removals, and any doubts about the amount in controversy should be resolved in favor of federal jurisdiction. *Id.* at 42-43 ("[I]f a federal court is uncertain about whether 'all matters in controversy' in a purposed class action 'do not in the aggregate exceed the sum or value of $5,000,000, the court should err in favor of exercising jurisdiction over the case."); *see also Dart Cherokee*, 574 U.S.

at 89 ("It suffices to point out that no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court.").

20.    The ultimate inquiry when assessing the amount in controversy is estimating how much the complaint places into controversy, not what a defendant may actually owe in damages. *LaCross v. Knight Transportation Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable."); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (holding that in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages in controversy"). Thus, the calculations Defendants make herein are not an admission or concession on liability or damages. Defendants expressly deny Plaintiffs' claims and allegations and deny that they are liable to Plaintiffs or the putative class in any amount, or that Plaintiffs or the putative class are entitled to any relief from Defendants.

21.    A removing defendant's burden of establishing the amount in controversy for purposes of a CAFA "is not daunting, as courts recognize that under this standard, a removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages." *Korn v. Polo Ralph Lauren Corp.*, 536 F. Supp. 2d 1199, 1204-05 (E.D. Cal. 2008) (internal quotations omitted); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1117 (9th Cir. 2004) ("the parties need not predict the trier of fact's eventual award with one hundred percent accuracy").

### 1.    Plaintiffs' claim for waiting time penalties alone places well over $5 million into controversy.

22.    The Complaint alleges that California Labor Code sections 201 and 202 "require that an employer pay all wages due to an employee after said employee is discharged or quits." Compl., ¶ 70. The Complaint further alleges that "employees were entitled to compensation for the violations set forth in this Complaint," and that

"Defendants failed to pay all wages due to the Plaintiff Faibvre and some of the members of the Class who separated from Defendants." Compl., ¶ 73. As a result, the Complaint alleges, "Defendants are required to compensate these employees for all their unpaid wages earned and an additional penalty equal to the daily earnings of such employees up to an amount equal to those owed for 30 days of work." *Id.*

23.    The Complaint attempts to artfully plead around a potential CAFA removal based on waiting time penalties by attempting to make the claim difficult to quantify. For example, the Complaint discusses only Plaintiff Faibvre's alleged entitlement to waiting time penalties (without disclaiming any entitlement by Plaintiff Hamoda) and states that Plaintiff Faibvre "does not allege that all separated members of the Class are owed waiting time penalties or that they are owed the full 30-day penalty under Labor Code § 203, because it is unknown to her [*sic*] at this time whether Defendants paid some of the separated members of the Class all their owed wages upon separation or paid them all their owed wages less than 30 days after their separation." Compl., ¶ 73. However, other than the wages purportedly owed due to the alleged violations, the Complaint does not allege that Defendants withheld any other types of wages from Plaintiffs or any putative class member upon separation.

24.    The Complaint's effort to mask the amount in controversy for the waiting time penalties, while simultaneously lacking any clear limits on the claim, is ultimately unsuccessful. According to the Complaint, Plaintiffs and each member of the putative class sustained at least one of the violations alleged in the Complaint. *See, e.g.*, Compl., ¶ 28 ("Common questions of law and fact exist as to **all members of the Class**" and listing the Complaint's alleged violations.) That is sufficient to trigger waiting time penalties. *See Barzi v. Equinox Holdings, Inc.*, 2024 WL 4133020, at *5 (C.D. Cal. Sept. 9, 2024) ("to support a 100% violation rate, Defendant need only persuade the Court that it is more likely than not that each member of the putative class has a claim for at least one theory of liability raised in the Complaint"); *Demaria v. Big Lots Stores - PNS, LLC*, 2023 WL 6390151, at *7 (E.D. Cal. Sept. 29, 2023) ("[T]he recovery of waiting time

penalties does not hinge on the number of violations committed; rather Defendants 'need only have caused and failed to remedy a single violation per employee for waiting time penalties to apply.'") (quoting *Noriesta v. Konica Minolta Bus. Sols. U.S.A.*, 2019 WL 7987117, at *6 (C.D. Cal. June 21, 2019)); *Cavada v. Inter-Continental Hotels Grp.*, 2019 5677846, at *9 (S.D. Cal. Nov. 1, 2019) (finding reasonable the assumption that "each [terminated] employee suffered at least one violation" and denying remand motion).

25.    Under Plaintiffs' claims, allegations, and theories of liability, Defendants are informed and believe that USN's records show that there were 4,984 non-exempt USN employees who were temporarily assigned to work for Defendants and whose alleged joint employment with Defendants ended in October 2023. The average rate of pay for those 4,984 individuals was $90.74 per hour, with a high of $160 per hour and a low of $40 per hour. Using the averaged pay rate, and conservatively assuming eight-hour shifts (although Defendants are informed and believe that USN's records show that Plaintiffs and putative class members were typically scheduled for twelve-hour shifts), Plaintiffs' waiting time penalty claim places into controversy **$108,539,558.40** (4,984 individuals x $90.74 per hour x 8 hours x 30 days). Assuming, even more conservatively, the lowest pay rate and eight-hour shifts, the waiting time penalty amount in controversy is **$47,846,400** (4,984 individuals x $40.00 per hour x 8 hours x 30 days).

26.    Even if a 100% violation rate for waiting time penalties were somehow deemed unreasonable, just a small fraction of the putative class experiencing a single violation would be enough to exceed $5 million in waiting time penalties. For example, assuming the averaged pay rate and eight-hour shifts, it takes only 230 individuals—a 4.61% violation rate—to exceed $5 million: 230 individuals x $90.74 per hour x 8 hours x 30 days = $5,008,848.00. Assuming the lowest pay rate and eight-hour shifts, it takes only 521 individuals—a 10.45% violation rate—to exceed $5 million: 521 individuals x $40 x 8 x 30 = $5,001,600.00. The Complaint cannot be fairly construed to suggest that 95.39% (or, more conservatively, 89.55%) of the putative class did not sustain any of the

violations alleged in the Complaint. Thus, Plaintiffs' waiting time penalty claim
indisputably places well over $5 million into controversy.

2.    **Plaintiffs' other claims cause the amount in controversy to further exceed $5 million.**

27.    In addition to the waiting time penalty claim, the Complaint alleges seven
other Labor Code and common law claims. For example, the Complaint alleges that
putative class members "were not paid for all hours worked, including time spent on
modules, onsite induction and orientation, and for work performed at their assigned
Kaiser facilities, even though such time spent on such activities is compensable under
California law." Compl., ¶ 15. The Complaint further alleges that putative class members
were not paid for "work-required travel time, and associated wait time, including, but not
limited to, traveling between cities, between hotels, and between Kaiser facilities and
their hotels," were not paid. Compl., ¶ 16. The Complaint also alleges that certain work-
related activities, such as participating in orientation and induction, and completing
modules, were not factored into whether putative class members were entitled to daily
and/or weekly overtime." Compl. ¶ 19. Based on these facts, the Complaint alleges that
Defendants violated Labor Code sections 200, 223, 226, 500, 510, 1197, 1198, and "the
Applicable Wage Orders" and are liable for monetary damages and penalties, among
other remedies. Compl., ¶¶ 32-48.

28.    The Complaint also alleges that putative class members "were not
authorized and/or permitted to take lawful meal or rest breaks under California law, and
did not receive break premiums owed them under California law." Compl., ¶ 20. As a
result, Plaintiffs allege that they and the putative class are entitled to recover one or two
additional hours of pay at their regular rate of compensation for each day a meal and/or
rest period was not "authorized and/or permitted." Compl., ¶¶ 49-61.

29.    The Complaint further alleges that Defendants breached contractual
obligations to pay certain "non-discretionary bonuses (such as guaranteed pay, early

DEFENDANTS' NOTICE OF REMOVAL

arrival bonus and arrival bonus) and incentives" and are liable for monetary damages. Compl., ¶¶ 21, 62-64.

30.    The Complaint also alleges that Defendants failed to reimburse Plaintiffs and putative class members for certain work-related costs, such as meals and mobile phones. Compl., ¶ 22.

31.    Finally, the Complaint alleges that Defendants are liable for monetary penalties under Labor Code section 226 for failing to provide Plaintiffs and putative class members "with wage statement accurately displaying the information required by Labor Code § 226(a)." Compl., ¶¶ 65-68.

32.    As summarized, above, each of the seven non-waiting time penalty claims seek substantial monetary damages and/or penalties. Thus, these claims cause the amount in controversy to further exceed $5 million.

### 3.    Plaintiffs' claim for attorneys' fees causes the amount in controversy to even further exceed $5 million.

33.    The Complaint seeks to recover attorneys' fees. *See* Compl., Prayer for Relief, ¶ 9. A plaintiff's claim for attorneys' fees factors into the amount in controversy for CAFA-removal purposes. *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1156 (9th Cir. 1998) (claims for statutory attorneys' fees are to be included in amount in controversy, regardless of whether award is discretionary or mandatory); *Brady v. Mercedes-Benz USA, Inc.*, 243 F. Supp. 2d 1004, 1010-11 (N.D. Cal. 2002) ("Where the law entitles the prevailing plaintiff to recover reasonable attorney fees, a reasonable estimate of fees likely to be incurred to resolution is part of the benefit permissibly sought by the plaintiff and thus contributes to the amount in controversy").

34.    In the context of CAFA removals, courts have found that 25 percent of the amount in controversy is a reasonable benchmark for a future attorneys' fees award. *See Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013) ("[Defendant] correctly notes that 25% recovery is the 'benchmark' level for reasonable attorney's fees in class action cases."); *see also, e.g., Hamilton v. Wal–Mart Stores Inc.*,

DEFENDANTS' NOTICE OF REMOVAL

2017 WL 4355903, at *5-6 (C.D. Cal. Sept. 29, 2017) (denying motion to remand and applying 25% estimate to attorneys fee request); *Gutierrez v. Stericycle, Inc.*, 2017 WL 599412, at *17 (C.D. Cal. Feb. 14, 2017); *Yocupicio v. PAE Group, LLC*, No. 14-8958-GW, 2014 WL 7405445, *6 (C.D. Cal. Dec. 29, 2014) ("The Court would thus include a 25% fee award in its amount-in-controversy calculation" in a wage and hour class action), rev'd on other grounds, 795 F.3d 1057 (9th Cir. 2015)).

35.   Thus, Plaintiffs' request for attorneys' fees causes the amount in controversy to further exceed $5 million.

## V.   VENUE

36.   Venue lies in the United States District Court for the Southern District of California, pursuant to 28 U.S.C. §§ 1391(a), 1441, and 84(c). Plaintiffs originally brought this action in the California Superior Court for the County of San Diego, which is located within the Southern District of California. 28 U.S.C. § 84(c). Thus, venue is proper in this district because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

## VI.   NOTICE TO STATE COURT AND TO PLAINTIFF

37.   Defendants will promptly serve a true and correct copy of this Notice of Removal on Plaintiffs and file it with the Clerk of the California Superior Court for the County of San Diego, as required under 28 U.S.C. § 1446(d).

## VII.   CONCLUSION

38.   Based on the foregoing, Defendants respectfully that this action be removed to this Court. If any question arises as to the propriety of the removal of this action, Defendants respectfully request that they be afforded the opportunity to present a brief and oral argument in support of their position that this action is subject to removal.

DEFENDANTS' NOTICE OF REMOVAL

1

DATED: March 14, 2025

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully submitted,

SEYFARTH SHAW LLP

By: _/s/ Christian J. Rowley_____
Christian J. Rowley
Kerry Friedrichs
Parnian Vafaeenia
Taylor D. Horn

Attorneys for Defendants
KAISER FOUNDATION
HOSPITALS and THE
PERMANENTE MEDICAL GROUP,
INC.

DEFENDANTS' NOTICE OF REMOVAL